**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HYLA GOLD, on behalf of herself and all others similarly situated, <br><br>         Plaintiff, <br><br>    v. <br><br> CLEAR CHANNEL COMMUNICATIONS, INC. and CLEAR CHANNEL OUTDOOR HOLDINGS, INC, <br><br>         Defendants. | Civil Action No. <br> 1:07-CV-08204-DLC |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
STRIKE PLAINTIFF'S STATE LAW CLASS ACTION CLAIMS**

MORGAN, LEWIS & BOCKIUS LLP
Christopher A. Parlo
Leni D. Battaglia
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000
(212) 309-6001 (fax)

Counsel for Defendants
   Clear Channel Communications, Inc. and
   Clear Channel Outdoor Holdings, Inc.

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................... 3

I.    THE COURT IS EMPOWERED TO STRIKE THE CLASS CLAIM
      NOW ........................................................................................................... 3

      A. PLAINTIFF'S NYLL CLASS ACTION CLAIM SHOULD BE
         STRICKEN BECAUSE IT VIOLATES CPLR SECTION 901(B) ..................... 4

         1. THE CLASS CLAIM ASSERTED IN COUNT TWO MUST BE
            STRICKEN BECAUSE THE NYLL PROVIDES FOR A
            PENALTY BUT DOES NOT AUTHORIZE CLASS ACTIONS ......... 4

         2. PLAINTIFF CANNOT WAIVE LIQUIDATED DAMAGES TO
            AVOID § 901(B) ................................................................ 5

         3. PLAINTIFF MAY NOT WAIVE LIQUIDATED DAMAGES
            UNDER THE NYLL ON BEHALF OF THE CLASS AND
            REMAIN AN ADEQUATE CLASS REPRESENTATIVE .................. 8

      B. PLAINTIFF'S STATE LAW OVERTIME CLASS ACTION CLAIM
         SHOULD BE DISMISSED BECAUSE IT CONFLICTS WITH
         FEDERAL LAW FOR SEVERAL REASONS ....................................... 9

         1. SUBSTANTIAL PRECEDENT SUPPORTS DISMISSAL OF
            PLAINTIFF'S NYLL CLASS CLAIM ON THE BASIS OF
            INHERENT INCOMPATIBILITY ...................................... 10

         2. THE LEGISLATIVE HISTORY OF THE FLSA SUPPORTS
            ACTION CLAIM ASSERTED IN COUNT TWO ON THE
            BASIS OF INHERENT INCOMPATIBILITY ........................... 12

         3. THE POTENTIAL FOR DEPRIVING PARTIES OF THEIR
            SUBSTANTIVE RIGHTS ALSO SUPPORTS STRIKING THE
            CLASS ACTION CLAIM IN COUNT TWO ........................... 13

         4. PLAINTIFF'S STATE LAW CLASS ACTION CLAIM FOR
            OVERTIME IS ALSO IMPLIEDLY PREEMPTED BY
            FEDERAL LAW ............................................................ 17

         5. AN OPT-OUT CLASS ACTION UNDER RULE 23 IS NOT
            SUPERIOR TO OTHER AVAILABLE METHODS FOR
            ADJUDICATION ........................................................... 21

CONCLUSION ...................................................................................................... 24

Plaintiff Hyla Gold ("Plaintiff") seeks to bring an opt-in collective action on behalf of certain current and former "Sales Representatives" of Defendant Clear Channel Outdoor Holdings, Inc. ("Outdoor"), a subsidiary of Defendant Clear Channel Communications, Inc. ("Communications" and, together with Outdoor, "Defendants"), who she claims were not paid overtime compensation in violation of the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 201 et seq. (Count I).  Plaintiff simultaneously seeks to bring an opt-out class action, under Federal Rule of Civil Procedure 23 ("Rule 23"), on behalf of the same class and based on the same conduct, claiming that Defendants also violated the New York Labor Law ("NYLL") (Count II).

As explained below, however, while Plaintiff may seek to pursue her NYLL claim as an individual, her attempt to litigate the NYLL claim on a class-wide basis violates Section 901(b) of the New York Civil Practice Law and Rules ("CPLR"), which provides that a claim brought under a statute that creates or imposes a penalty cannot be maintained as a class action unless the statute specifically authorizes the recovery of the penalty in a class action.  The NYLL provides for a penalty in the form of liquidated damages, but does not specifically authorize a class claim.  Thus, Plaintiff's purported NYLL class claim should be stricken because it violates CPLR § 901(b).

Plaintiff's effort to bring an overtime claim under the NYLL as an opt-out class action should also be stricken because doing so conflicts with federal law.  First, the NYLL claim, brought as an opt-out class action, irreconcilably conflicts with the identical FLSA claim brought as an opt-in collective action.  In that regard, FLSA § 216(b) expressly limits the scope of representative class actions for overtime pay by requiring putative class members to affirmatively "consent in writing" (i.e. opt-in) to any action seeking to determine their FLSA rights.  29 U.S.C. § 216(b).  Congress expressly amended the FLSA to ban representative (i.e. class) actions and to preclude having individuals' rights under the FLSA adjudicated in absentia.  Similarly, Congress intended to free employers from the burden of litigating against the alleged overtime claims of absent class members.  By asserting her state law overtime claim on an opt-out class basis under Rule 23, Plaintiff is improperly attempting to sidestep the Congressional mandate that group overtime claims

should be adjudicated, if at all, only through the <u>opt-in</u> mechanism.

Presented with this same issue, numerous courts have dismissed such state law class claims. For example, just three months ago, the Honorable J. Curtis Joyner authored the latest decision dismissing a state law class action claim as "inherently incompatible" with an FLSA collective action claim. <u>See, e.g.</u>, <u>Ramsey v. Ryan Beck & Co., Inc.</u>, No. 07-0635, 2007 WL 2234567, *4 (E.D. Pa. Aug. 1, 2007).[1]  This Court should similarly strike the <u>opt-out</u> state law class action claim.

Second, dismissal of the class action claim is well grounded not only in the structure and intent of the FLSA, but also in the need to protect absent class members' substantive rights.  The NYLL overtime regulation that forms the basis for Plaintiff's class action claim expressly incorporates the "manner," "methods," and exemptions contained in the FLSA.  Thus, the adjudication of Plaintiff's class action claim under the NYLL would, based on *res judicata* and *collateral estoppel,* necessarily determine the FLSA rights of absent class members who did not affirmatively opt-in to the action.  This is the exact result Congress sought to prohibit in enacting FLSA § 216(b), and in requiring that FLSA overtime claims be resolved only on an individual, opt-in basis.

Third, adjudication of Plaintiff's opt-out state law class action claim would interfere with the method selected by Congress for the resolution of FLSA overtime claims, and thereby interfere with the purposes and objectives of that law.  Therefore, Plaintiff's opt-out class claim is impliedly preempted.

Fourth, this Court may determine now that the Rule 23 opt-out procedure is not superior to other available methods for the fair and efficient adjudication of the putative class members' overtime claims – namely, the Section 216(b) opt-in collective action mechanism.  As one federal court aptly stated in refusing to certify a state law overtime class action under Rule 23, the availability of an opt-in collective action under the FLSA "undercuts all the Rule 23(b)(3)

---

[1]    See also <u>Hyman v. WM Fin. Servs., Inc.</u>, Civ. A. No. 06-4038, 2007 WL 1657392 (D.N.J. June 7, 2007); <u>Bros. v. Portage Nat'l Bank</u>, No. CIV A 306-94, 2007 WL 965835, at *7 (W.D. Pa. Mar. 29, 2007); <u>Otto v. Pocono Health Sys.</u>, 457 F. Supp. 2d 522 (M.D. Pa. 2006); <u>Herring v. Hewitt Assocs., Inc.</u>, No. Civ. 06-267 (GEB), 2006 WL 2347875 (D.N.J. Aug. 11, 2006); <u>Himmelman v. Cont'l Cas. Co.</u>, No. Civ. 06-166 (GEB), 2006 WL 2347873 (D.N.J. Aug. 11, 2006).  <u>But</u> <u>see</u> cases and discussion <u>infra</u> pp. 12-13, n.12.

superiority factors." <u>Edwards v. City of Long Beach</u>, 467 F. Supp.2d 986, 992 (C.D. Cal. Dec. 12, 2006) (quoting <u>Leuthold v. Destination America</u>, 224 F.R.D. 462, 469 (N.D. Cal. 2004)).

For all of these reasons, Plaintiff's NYLL class claim should be dismissed.

## I.    <u>THE COURT IS EMPOWERED TO STRIKE THE CLASS CLAIM NOW.</u>

Rule 23(d)(4) provides:

(d) Orders in Conduct of Actions.  In the conduct of actions to which this rule [Rule 23] applies, the court may make appropriate orders: . . . (4) requiring that the pleadings be amended to <u>eliminate therefrom allegations as to representation of absent persons</u>, and that the action proceed accordingly; . . . ."

Fed. R. Civ. P. 23(d)(4) (emphasis added).  Orders under Rule 23(d)(4) are "procedurally inseparable" from a court's duty under Rule 23(c)(1) to determine "[a]s soon as practicable after the commencement of an action brought as a class action, . . . whether it is to be so maintained." <u>See</u> 7B Wright & Miller, <u>Federal Practice and Procedure Civ. 2d</u> § 1795 (1986).  Unlike in the context of the deferential standard of review for a Rule 12(b) motion, the <u>Plaintiff</u> bears the burden of satisfying Federal Rule 23.  <u>See</u> <u>Fuller v. Instinet, Inc.</u>, 120 Fed. Apx. 845, 846 (2d Cir. 2004).

Either party may move for a determination under Rule 23, and the Court need not wait for Plaintiff to file a motion for class certification.  <u>Id.</u> § 1785. <u>See also</u> <u>Connolly v. McCall</u>, 254 F.3d 36, 42 (2d Cir. 2001) (affirming the dismissal of a class claim "on the pleadings and prior to discovery"); <u>Vinole et al. v. Countrywide Home Loans, Inc.</u>, No. 07cv127 (S.D. Cal Nov. 15, 2007) (order denying class certification); <u>Lumpkin v. E.I. Du Pont De Nemours & Co.</u>, 161 F.R.D. 480 (M.D. Ga. 1995); <u>Chevron USA, Inc. v. Vermilion Parish Sch. Bd.</u>, 215 F.R.D. 511, 515-16 (W.D. La.), <u>aff'd</u>, 337 F.3d 459, 463 (5th Cir. 2004); <u>Sipper v. Capital One Bank</u>, 2002 U.S. Dist. LEXIS 2881 (C.D. Cal. Feb. 28, 2002).  Rule 23(d)(4) orders are particularly appropriate where plaintiffs plainly cannot satisfy the requirements of Rule 23.  <u>See</u>, <u>e.g.</u>, <u>Thompson v. Merck & Co.</u>, Nos. 01-1004, 01-1328, 01-3011, 01-6029, 02-1196, 02-4176, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) (granting motion to strike class allegations because plaintiffs could not satisfy Rule 23); <u>Barabin v. Aramark Corp.</u>, 210 F.R.D. 152, 162 (E.D. Pa. 2002) (same).  Rather than defer a decision and subject the parties to costly and unnecessary discovery, the Court should determine now, pursuant

to Rule 23(d), whether there is any impediment to certification of a NYLL class action.  The Court

should not hesitate to grant this relief now, because Plaintiff's state law class action claim fails as a

matter of law for the reasons set forth below, and no discovery can cure the fatal deficiencies

inherent in that claim.  See, e.g., Thompson, 2004 WL 62710, at *2 (granting defendant's motion to

strike class allegations at the outset of the litigation because "[n]o amount of additional discovery

will alter this conclusion").

**A.     PLAINTIFF'S NYLL CLASS ACTION CLAIM SHOULD BE STRICKEN BECAUSE IT VIOLATES CPLR SECTION 901(b).**

**1.     The Class Claim Asserted In Count Two Must Be Stricken Because The NYLL Provides For A Penalty But Does Not Authorize Class Actions.**

CPLR Section 901 prohibits the use of a class action under a statute that provides for

recovery of a penalty or a minimum measure of recovery, unless it is expressly authorized.

Specifically, Section 901(b) states:

> Unless a statute creating or imposing a penalty, or a minimum measure of recovery,
> *specifically authorizes* the recovery thereof in a class action, an action to recover a
> penalty or minimum measure of recovery created or imposed by statute *may not be
> maintained as a class action.*

CPLR § 901(b) (emphasis added).

Plaintiff purports to bring a class action claim under the NYLL (see Complaint ¶¶ 97-103)

which, among other remedies, provides for the assessment of liquidated damages.  See N.Y. Lab.

Law § 198(a-1).[2]  Because liquidated damages under the NYLL constitute a penalty within the

meaning of § 901(b), and because the NYLL contains no specific authorization for a class action to

seek such damages, Plaintiff may not maintain this action as a class action.  Carter v. Frito-Lay,

Inc., 425 N.Y.S.2d 115, 116 (App. Div. 1st Dep't 1980) (barring NYLL class action under CPLR

§ 901(b) because liquidated damages are a penalty), aff'd, 419 N.E.2d 1079 (N.Y. 1981); Woods v.

Champion Courier, Oct. 9, 1998 N.Y.L.J. 26, col 1 (N.Y. Sup. Ct. 1998) (holding that the liquidated

damages under NYLL § 198 were "punitive damages" and, thus, a "penalty" under § 901(b)).

---

[2]      Plaintiff may contend that a penalty is available only for "willful" violations.  The Complaint,
however, plainly alleges a willful violation of the NYLL.  Compl. at ¶ 101.

The decision in <u>Carter</u>, 425 N.Y.S.2d at 116, is precisely on point.  There, the First Department held, in a decision affirmed by the Court of Appeals, that a class action under the NYLL could not be maintained because the statute "provides for liquidated damages and does not contain the necessary clause allowing these damages to be recovered in a class action."  <u>Id.</u>  <u>See also</u> <u>Ballard v. Cmty. Home Care Referral Serv. Inc.</u>, 695 N.Y.S.2d 130, 132 (App. Div. 2d Dep't 1999) (precluding NYLL class action under § 901(b)); <u>Caruso v. Allnet Commc'ns Servs. Inc.</u>, 662 N.Y.S.2d 468, 470 (App. Div. 1st Dep't 1997) (upholding denial of class certification pursuant to § 901(b)); <u>Parker v. Equity Adver. Agency, Inc.</u>, Mar. 10, 1982 N.Y.L.J. 11, col. 2 (N.Y. Sup. Ct. 1982) (finding that § 901(b) precluded plaintiffs from bringing a class action under the NYLL); <u>Foster v. Food Emporium</u>, No. 99 CIV 3860, 2000 WL 1737858, *3 n.3 (S.D.N.Y. Apr. 26, 2000) (observing that "courts in New York have routinely denied class certification to plaintiffs pursuing statutory claims for unpaid wages on the ground that CPLR 901(b) prohibits it").[3]

This Court should follow these rulings of the New York Appellate Division, which are dispositive in the absence of a Court of Appeals decision.  <u>See</u> <u>Dibella v. Hopkins</u>, 403 F.3d 102, 112 (2d Cir. 2005) (federal courts should be guided by state courts' application of state laws).[4]

Because Plaintiff is barred from maintaining her NYLL class action claim under § 901(b), the Court should strike the class claims asserted in Count Two of the Complaint.

---

[3]    <u>But</u> <u>see</u> <u>Westerfield v. Washington Mutual Bank</u>, .No. 06-CF-2817, 2007 WL 2162989 (E.D.N.Y. July 26, 2007); <u>Klein v. Ryan Beck Holdings, Inc. et al.</u>, No. 06 –Civ. 3460, 2007 WL 2059828 (S.D.N.Y. July 20, 2007).

[4]    <u>See also</u> <u>Universal Accupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.</u>, 370 F.3d 259, 263 fn. 5 (2d Cir. 2004) (federal courts are bound by state court interpretations of New York law); <u>Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.</u>, 344 F.3d 211, 220-21 (2d Cir. 2003) (federal courts are bound to apply state law as interpreted by New York courts); <u>Pahuta v. Massey-Ferguson, Inc.</u>, 170 F.3d 125, 134 (2d Cir. 1999) (absent persuasive evidence that the New York Court of Appeals would reach a different conclusion, the Second Circuit and federal district courts are bound to apply New York state law as interpreted by New York intermediate appellate courts); <u>In re Brooklyn Navy Yard Asbestos Litig.</u>, 971 F.2d 831, 851 (2d Cir. 1992) (remanding case to district court to await guidance as to how to rule pending a decision from New York's 1st Department state appellate court on the issue in a similar case); <u>Deeper Life Christian Fellowship, Inc. v. Sobol</u>, 948 F.2d 79, 84 (2d Cir. 1991) (where a New York appellate court has construed a New York statute, its construction is binding on the Second Circuit absent persuasive data that New York's highest state court would decide otherwise).

2.    **Plaintiff Cannot Waive Liquidated Damages To Avoid § 901(b).**

Plaintiff may attempt to circumvent § 901(b) by seeking leave from the Court to amend her

Complaint in order to waive any claim for liquidated damages. Both Federal and New York State

law make clear, however, that a statutory penalty may not be waived. See Rogers v. City of Troy,

148 F.3d 52, 59 fn. 6 (2d Cir. 1998); Sun Theaters Corp. v. RKO Radio Pictures, Inc., 213 F.2d 284,

287 (7th Cir. 1954); Locklin v. Day-Glo Color Corp., 429 F.2d 873 (7th Cir. 1970); Asher v. Abbott

Labs., 737 N.Y.S.2d 4, 4 (App. Div. 1st Dep't 2002) (treble damages under New York's Donnelly

Act cannot be waived); Parker v. Equity Adver. Agency, Inc., Mar. 10, 1982 N.Y.L.J. 11, col. 2

(N.Y. County 1982) (NYLL liquidated damages may not be waived in the class action context).

In Asher v. Abbott Labs, plaintiffs brought a claim under New York's Donnelly Act, which

provides that "any person who shall sustain damages by reason of any violation of this section shall

recover three-fold the actual damages sustained thereby. . . ." Asher, 737 N.Y.S.2d at 4. The

Appellate Division held that "[p]rivate persons cannot bring a class action under the Donnelly Act

because the treble damages remedy provided in General Business Law § 340(5) is a 'penalty' within

the meaning of CPLR § 901(b), the recovery of which in a class action is not specifically authorized

and the imposition of which cannot be waived." Id. (emphasis added). See also Cox v. Microsoft

Corp., 737 N.Y.S.2d 1, 2 (App. Div. 1st Dep't 2002) (finding that treble damages under the

Donnelly Act are penal in nature and mandatory, and thus refusing to allow a class action under

CPLR § 901(b)); Rubin v. Nine West Group, Inc., No. 0763/99, 1999 WL 1425364, *2 (N.Y. Sup.

Ct. Nov. 3, 1999) (holding that treble damages under the Donnelly Act are mandatory and cannot be

waived); Russo & Dubin v. Allied Maint. Corp., 407 N.Y.S.2d 617 (N.Y. Sup. Ct. 1978) (same);

Leider v. Ralfe, 387 F. Supp. 2d 283, 288-89 (S.D.N.Y. 2005) (refusing to certify class action

because statute contained a penalty but did not authorize class actions).

Here, Section 198 of the Labor Law, pursuant to which Plaintiff and the class members may

recover attorneys' fees and liquidated damages if they succeed on the class claims, provides:

> In any action instituted upon a wage claim by an employee or the commissioner in
> which the employee prevails, the court shall allow such employee reasonable
> attorney's fees, and, upon a finding that the employer's failure to pay the wage
> required by this Article was willful, an additional amount as liquidated damages

equal to twenty-five percent of the total amount of the wages found to be due.

N.Y. Lab. Law § 198(a-1) (emphasis added). [5]    The plain, unambiguous language of the statute leaves no question that the liquidated damages in § 198 are a penalty and, upon a finding that an employer's failure to pay the required wage was "willful," that the Court "shall allow" liquidated damages. N.Y. Lab. Law § 198 (1-a) (2006) (emphasis added). The United States Supreme Court has observed that the term "shall" clearly reflects mandatory action. See Bd. of Pardons v. Allen, 482 U.S. 369, 377 (1987) ("Significantly, the Montana statute, like the Nebraska statute, uses mandatory language ('shall') . . . ."); Hewitt v. Helms, 459 U.S. 460 (1983) (recognizing "shall" to be language "of an unmistakably mandatory character") (overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 483-84 (1995)). [6]    Both the Second Circuit and the New York Court of Appeals have reached the same conclusion. See Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 202 (2004) (recognizing that the term "shall" indicates the "statutes' mandatory language"); Losurdo v. Asbestos Free, Inc., 1 N.Y.3d 258, 265 (2003) ("The language is carefully crafted in that imposition of the penalty if mandatory ('shall') . . . ."). See also Rubin, 1999 WL 1425364, at *5 (holding that the use of the word "shall" in the Donnelly Act's treble damages provision renders such damages "mandatory"). These damages cannot be waived for strategic convenience.

Because the only New York appellate court to discuss the issue of a mandatory penalty (the First Department in Asher and Cox) has twice ruled that there cannot be a waiver of mandatory penalties under § 901(b) and, consequently, that any class action seeking such a mandatory penalty should be dismissed under § 901(b), this Court should follow Asher and Cox. See supra at 6 (citing cases recognizing that federal courts should be guided by state courts' application of the state laws at issue).

---

[5]    Although Defendants dispute the merits of Plaintiff's claim, and did not willfully violate any provision of New York or Federal law, the fact that Plaintiff alleges willful behavior, and seeks damages on behalf of a class under a statute that provides for liquidated damages for a willful violation, is enough to trigger the § 901(b) prohibition of a class action in this case.

[6]    Defendants provide the reference to Sandin only because other courts commonly cited Sandin as having overruled Hewitt as to the analysis for evaluating the existence of a "liberty interest." However, the Court made clear in Sandin that it was not "technically" overruling the Hewitt decision. 515 U.S. at 483 n.5.

### 3.     Plaintiff May Not Waive Liquidated Damages Under The NYLL On Behalf Of The Class And Remain An Adequate Class Representative.

Assuming, *arguendo*, that liquidated damages under the Labor Law could be waived by an individual plaintiff in order to avoid § 901(b), which they cannot, Plaintiff and her counsel still cannot waive such damages on behalf of absent class members and still serve as an adequate representative of a class.  Courts in this Circuit and others have held that plaintiffs may not serve as adequate class representatives where plaintiffs and their counsel are willing to waive the rights of those they supposedly represent.  See, e.g., In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig., 209 F.R.D. 323, 339-40 (S.D.N.Y. 2002) (finding that class members seeking only injunctive relief could not be adequate class representatives for absent class members with other claims for damages); Feinstein v. Firestone Tire and Rubber Co., 535 F. Supp. 595, 606 (S.D.N.Y. 1982) (holding that plaintiffs who pursue only some of the claims available to the class are not adequate representatives).[7]  Applying this rule of law, "[a]ttempts by plaintiffs to get around CPLR 901(b) by waiving the liquidated damages remedy have been rejected by courts as undermining putative lead plaintiffs' ability to represent others who have a statutory right to the remedy."  Foster v. The Food Emporium, No. 99 CIV 3860, 2000 WL 1737858 (S.D.N.Y. Apr. 26, 2000) (rejecting attempt to amend complaint to add class claims under the New York Labor Law).[8]  As the court

---

[7]     See also Western States Wholesale, Inc. v. Synthetic Indus., Inc., 206 F.R.D. 271, 277 (C.D. Cal. 2002) (named plaintiff not adequate where only injunctive relief and disgorgement sought, not damages for lost sales or market share; "[a] class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class"); Thompson v. Am. Tobacco Co., Inc., 189 F.R.D. 544, 550 (D. Minn. 1999) (class representatives inadequate where they waived personal injury damages and sought only a medical monitoring program); Small v. Lorillard Tobacco Co., 679 N.Y.S.2d 593, 601-02 (App. Div. 1st Dep't 1998) (plaintiffs who brought claims for fraud and deceptive business practices against tobacco companies, but did not bring claims for physical injury and emotional distress arising from addiction to cigarettes, were not adequate representatives), aff'd, 94 N.Y.2d 43 (1999); Tegnazian v. Consol. Edison, Inc., 730 N.Y.S.2d 183, 187-88 (N.Y. Sup. Ct. 2000) (holding that named residential plaintiffs did not adequately represent that putative class where they did not assert any personal injury claims arising out of a blackout); Janik v. Rudy, Exelrod & Zieff, 119 Cal.App.4th 930, 938 (2004) (malpractice claim against class counsel could be pursued for omitting an important claim; "those who assume the responsibility of pursuing claims on behalf of a class assume the duty to protect all claims that class members would reasonably expect to be asserted") (emphasis added); City of San Jose v. Superior Court, 12 Cal.3d 447, 464 (1974) ("The plaintiffs here inadequately represent the alleged class because they fail to raise claims reasonably expected to be raised by the members of the class and thus pursue a course which, even should the litigation be resolved in favor of the class, would deprive class members of many elements of damage.").

[8]     See also Bradford v. Olympic Courier Sys., Inc., Slip. Op. at 5, 96-cv-05693 (Sup. Ct. Kings County,

reasoned in <u>Woods</u>, Oct. 9, 1998 N.Y.L.J. 25 at col. 1, "it is difficult to see how a class representative can 'fairly and adequately' represent the class if he has not at least investigated the possibility for another and better means of vindicating the class' rights."  <u>See</u> <u>also</u> <u>Myers v. Hertz Corp.</u>, 2007 WL 2126264, at *7 (E.D.N.Y. July 24, 2007 (holding that a Rule 23 class action was not a superior method of adjudication because the plaintiffs would have to waive their liquidated damages claims); <u>De La Cruz v. Gill Corn Farms</u>, 2005 WL 5419056 at *2 (N.D.N.Y. Jan. 25, 2005) (proposed class members' rights "are not adequately protected by employing a class procedure whereby they will automatically waive their right to pursue liquidated damages by failing to opt out").  <u>See</u> <u>also</u> <u>Kakani v. Oracle Corp.</u>, 2007 WL 1793774, at *7 (N.D.Cal. June 19, 2007) (denying motion to approve a settlement because it purported to resolve absent class members' FLSA rights unless those absent class members opted out of the settlement.)[9]

B.    **PLAINTIFF'S STATE LAW OVERTIME CLASS ACTION CLAIM SHOULD BE DISMISSED BECAUSE IT CONFLICTS WITH FEDERAL LAW FOR SEVERAL REASONS.**

In addition to the reasons set forth above, Plaintiff's attempt to assert a NYLL claim on an opt-out class basis under Rule 23 should be rejected because such a class claim for overtime conflicts with federal law.[10]

---

March 26, 1997) (holding that plaintiffs "are without authority to waive liquidated damages on behalf of the members of the class they seek to represent" as that would render them inadequate class representatives); <u>Parker v. Equity Advertising Agency, Inc.</u>, Mar. 10, 1982 N.Y.L.J. at 11 (Sup. Ct. N.Y.Cty. 1982) (dismissing class action seeking liquidated damages under § 198 after holding that "any attempt to waive the right to a statutory penalty to avoid CPLR § 901(b) is impermissible"); <u>Woods v Champion Courier, Inc.</u>, Oct. 9, 1998 N.Y.L.J. 26 at col. 1 (Sup. Ct., N.Y. Cty.) (holding that CPLR § 901(b) precluded class action mechanism to recover liquidated damages under Labor Law § 198).

[9]    Nor does simply encouraging putative class members to opt-out of the litigation if they wish to pursue the full remedies available to them render class representatives adequate, where those representatives seek a less than full complement of remedies.  "The ability to opt out of the class is insufficient to protect the rights of putative class members who would want to seek remedies other than those chosen by the representatives." <u>Clark v. Experian Info. Solutions, Inc.</u>, Nos. Civ. A.8:00-1217-24, 2001 WL 1946329, at *4 (D.S.C. Mar. 19, 2001) (<u>citing</u> <u>Small</u>, 679 N.Y.S. 2d at 601-02).

[10]    It is important to make clear, however, that Defendants are <u>not</u> challenging the right of individuals who may opt-in to an FLSA collective action to also seek to join their individual state law claims.  Thus, any argument by Plaintiff that dismissal of the state law class action claims would create duplicative litigation in state court is specious.  In fact, Defendants would not oppose the Court exercising supplemental jurisdiction

1.    **Substantial Precedent Supports Dismissal Of Plaintiff's NYLL Class Claim On the Basis of Inherent Incompatibility.**

Count Two of the Complaint asserts a claim based on precisely the same facts which allegedly also give rise to the FLSA collective action claim asserted in Count One.  The only difference between the two Counts is that the state claim relies on an opt-out class action device while the FLSA claim requires an opt-in collective action device.  As such, Count Two is inherently incompatible with the FLSA claim and must be dismissed.

Substantial precedent favors the dismissal of class claims for overtime which are asserted simultaneously in an action seeking damages under the FLSA.  For instance, in Ramsey, 2007 2234567, at *4, Judge Joyner held that "FLSA collective actions are inherently incompatible with Rule 23 state-law class actions, and thus cannot be brought simultaneously in federal court under one lawsuit."  Accordingly, Judge Joyner dismissed plaintiff's state law class action claims seeking overtime and other unpaid wages.  See id. at 5.  The same result was reached in Brothers v. Portage Nat'l Bank, No. CIV A 306-94, 2007 WL 965835, at *7 (W.D. Pa. Mar. 29, 2007), which held that "[b]ecause the class certification procedures under 29 U.S.C. § 216(b) are incompatible with those set forth in Fed. R. Civ. P. 23, the Court must dismiss those state-law claims in Plaintiff's Second Amended Complaint that fall within the provisions of the Fair Labor Standards Act."[11]

_____

over the state law claims of putative class members who actually want to litigate their FLSA claims and thus opt-in to the collective action.  There is no downside to this alternative approach and it eliminates the risks of serious prejudice as discussed at length below.  Other courts have acknowledged that this is the logical approach when faced with both class and collective action claims in the same lawsuit.  See, e.g., Ballaris v. Wacker Siltronic Corp., No. Civ. 00-1627-KI, 2002 WL 926272, at *3 (D. Or. Feb. 7, 2002) (noting that plaintiff stipulated he would "not seek to include people in the Rule 23 state law class who did not opt into the FLSA collective action"); Robinson v. Sizes Unlimited, Inc., 685 F. Supp. 442, 445-46 (D.N.J. 1988) (limiting "possible membership" in the state discrimination law class to those individuals who opted into the action with respect to the ADEA claim).  Indeed, this approach is particularly appropriate when weighed against the severe risk to absent class members and the fact that the right to file a class action is an exception to the typical rule that plaintiffs should bring individual claims.  Gen. Tel. Co. v. Falcon, 457 U.S. 147, 155 (1982) (class actions represent "an exception to the usual rule that litigation is conducted by and on behalf of individual parties.") (emphasis added).

[11]    Many other courts have recognized the logical appeal of this conclusion.  See, e.g., Trezvant v. Fid. Employer Servs. Corp., 434 F. Supp. 2d 40, 57-58 (D. Mass. 2006) ("[U]nder the provisions of the Fair Labor Act [sic], even if [a state claim was viable], this claim could not be brought as a Rule 23 class action."); Glewwe v. Eastman Kodak Co., No. 05-6462T, 2006 WL 1455476, at *4 (W.D.N.Y. May 25, 2006) (declining to extend supplemental jurisdiction where "the state claims would present complex issues of the state law"); Letouzel v. Eastman Kodak Co., No. 05-6464T, 2006 WL 1455478, at *4 (W.D.N.Y. May

Additionally, in <u>Otto v. Pocono Health Sys.</u>, 457 F. Supp. 2d 522 (M.D. Pa. Oct. 27, 2006), the court cited the decisions in <u>Moeck</u>, <u>Herring</u>, and <u>Himmelman</u> (discussed below), noting that to allow an opt-out state law class action to proceed in a Section 216(b) opt-in action "would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement," which was meant to assure that "individuals would not have their [overtime] rights litigated without their input or knowledge." The <u>Otto</u> decision finds clear support in <u>Moeck v. Gray Supply Corp.</u>, No. 03-1950, 2006 WL 42368, at *5 (D.N.J. Jan. 6, 2006), which observed that "Congress created the opt-in procedure under the FLSA for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions." Because the plaintiffs' state law overtime claims, as here, were premised on the same facts as their FLSA claims, they were not suitable for class action treatment because that would allow the plaintiffs "to circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA [and] would undermine Congress's intent to limit these types of claims to collective actions." <u>Id.</u>

Similarly, the court in <u>Herring v. Hewitt Assocs., Inc.</u>, No. Civ. 06-267 (GEB), 2006 WL 2347875 (D.N.J. Aug. 11, 2006) and <u>Himmelman v. Cont'l Casualty Co.</u>, No. Civ. 06-166 (GEB), 2006 WL 2347873 (D.N.J. Aug. 11, 2006), dismissed state law class actions under the same circumstances present here. The plaintiffs pursued a collective action under the FLSA and a Rule 23 class action under state law. The court held that because FLSA actions have an opt-in scheme

---

25, 2006) (same); <u>Luciano v. Eastman Kodak Co.</u>, No. 05-6463T, 2006 WL 1455477, at *5 (W.D.N.Y. May 25, 2006) (same). <u>See also</u> <u>LaChapelle v. Owens-Illinois, Inc.</u>, 513 F.2d 286, 288 (5th Cir. 1975) (observing a "fundamental, irreconcilable difference between the class action described in Rule 23 and that provided for by the FLSA § [2]16(b)"); <u>Harper v. Yale Int'l Ins. Agency Inc.</u>, No. 03 C 3789, 2004 WL 1080193, at *5 (N.D. Ill. May 12, 2004) ("Plaintiffs, however, have arguably subverted congressional intent in creating the FLSA opt-in procedure by choosing to seek class certification of their [Illinois Minimum Wage Law] claims instead of pursuing an FLSA collective action."); <u>Rodriguez v. The Texan, Inc.</u>, No. 01 C 1478, 2001 WL 1829490, at *2 (N.D. Ill. Mar. 7, 2001) ("policy [of opting in under the FLSA] and the underlying congressional intent would be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement"); <u>Madrigal v. Green Giant Co.</u>, No. C-78-157, 1981 WL 2331, at *3 (E.D. Wash. Jul. 27, 1981) (dismissing state law class claims that parallel violations of the FLSA, ruling that "[i]f such a result were permitted, the statutory requirements of the FLSA would effectively be gutted").

and in "Rule 23 class actions a prospective party plaintiff must opt out of the class notice of the action . . . these two schemes are <u>inherently incompatible</u>." <u>See id.</u> at *2 (emphasis added). The court further held "that allowing the plaintiff to circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA would undermine Congress's intent to limit these types of claims to collective actions." <u>Id.</u> (citing <u>Moeck</u>, 2006 WL 42368, at *5).

Consistent with the reasoning of the <u>Ramsey</u>, <u>Otto</u>, <u>Brothers</u>, <u>Moeck</u>, <u>Herring</u>, and <u>Himmelman</u> decisions,[12] dismissing Plaintiff's state law class action claim is appropriate because it is inherently incompatible with federal law.

> **2.    The Legislative History Of The FLSA Supports Striking The Class Action Claim Asserted In Count Two On The Basis Of Inherent Incompatibility.**

The inherent incompatibility of a simultaneous opt-out class action and opt-in FLSA collective action is also well supported by the legislative history of the FLSA, which emphasizes the

---

[12]    Although certain cases have reached a different result (<u>see</u> <u>e.g.</u>, <u>Westerfield v. Washington Mutual Bank</u>, .No. 06-CF-2817, 2007 WL 2162989 (E.D. N.Y. July 26, 2007); <u>Klein v. Ryan Beck Holdings, Inc. et al.</u>, No. 06 –Civ. 3460, 2007 WL 2059828 (S.D.N.Y. July 20, 2007); <u>Neary v. Metropolitan Prop. & Cas. Ins. Co.</u>, 472 F. Supp.2d 247 (D. Conn. 2007); <u>Farhy v. Janney Montgomery Scott LLC</u>, 2007 WL 1455764 (E.D. Pa. Apr. 26, 2007); <u>Stabile v. A.G. Edwards</u>, 06-1360, slip op. (W.D. Pa. June 11, 2007); <u>Takacs v. A.G. Edwards & Sons, Inc.</u>, 444 F. Supp.2D 1100 (S.D. Cal. 2006); and <u>Campbell v. Entergy Nuclear Operations, Inc.</u>, No. 1:05-cv-11951, slip op. (D. Mass Aug. 7, 2007)), they are all distinguishable. For example, in none of these cases did the court squarely address the *res judicata* argument Defendant has advanced at *infra* pp. 14-21. <u>Klein</u> is particularly unhelpful because it is primarily focused on a Rules Enabling Act argument not presented here, and does not address the "inherent incompatibility," implied preemption, or superiority arguments. <u>Westerfield</u> is similarly flawed because the court failed to consider the legislative history of the FLSA or the *res judicata* arguments presented herein. In <u>Fahry</u>, although the court initially denied defendant's Motion to Dismiss, it did so without addressing the "inherent incompatibility," implied preemption, or superiority arguments. Moreover, the court ordered the parties to rebrief the issue following the decision in a similar case, <u>Hyman v. WM Fin. Servs., Inc.</u>, Div. A. No. 06-4038, 2007 1657392 (D.N.J. June 7, 2007), in which the court dismissed all of plaintiffs' state law class action claims. The rebriefed arguments have not been decided. <u>Stabile</u> should not be relied upon because it is an unadopted magistrate's report and recommendation without precedential value, only state overtime claims were present – not both state and federal, and the court never addressed the implied preemption or superiority arguments. Similarly, the court in <u>Takacs</u> never addressed the "inherent incompatibility" or superiority arguments. For all these same reasons this Court also should not be guided by <u>Campbell</u>. In <u>Neary</u>, the Court declined to exercise supplemental jurisdiction rather than dismiss the action based upon the Rules Enabling Act. The court still reached the correct result, however, in granting defendant's Motion to Dismiss plaintiff's state law class action.

statute's conflict with an opt-out joinder mechanism.  In amending the FLSA in the Portal-to-Portal Act of 1947, Congress intended to put an end to opt-out representative class actions for unpaid wages by requiring plaintiffs asserting such claims to affirmatively "opt-in" to such lawsuits by filing a written consent.  Pub. L. 49, Ch. 52 § 61 Stat. 84, 87 (1947).  The amendments expressly repealed a provision then in 29 U.S.C. § 216(b) which permitted "an employee or employees to designate an agent or representative to maintain an action for and on behalf of all employees similarly situated."  H.R. Conf. Rep. No. 80-326, at 13 (1947).  Congress even went so far as to title the relevant statutory provision: "Representative Actions Banned."  Pub. L. 49, Ch. 52 § 61 Stat. 84, 87.  As Congress explained, unless plaintiffs were prevented from aggregating claims by use of the opt-out class action device, "courts of the country would be burdened with excessive and needless litigation."  Portal-to-Portal Act of 1947 § 1(a)(1), (7), codified at 29 U.S.C. § 251(a)(1), (7).  See also Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1248 (11th Cir. 2003) (Congress created the "opt-in" language in order to "prevent large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit.").

### 3. The Potential for Depriving Parties of Their Substantive Rights Also Supports Striking The Class Action Claim In Count Two.

Serious concerns for the substantive rights of both absent class members and defendants also support striking the NYLL class claim.  Pursuant to § 216(b), individuals have the absolute substantive right to litigate their own unpaid overtime and minimum wage claims as party plaintiffs, including the right to elect whether, when, where, and how to pursue unpaid overtime and minimum wage claims – even where, as here, another individual purports to bring a collective action on behalf of herself and others alleged to be similarly situated.  See 29 U.S.C. § 216(b) (2005); Secretary of Labor Amicus Brief in Long John Silver's Rests., Inc. v. Cole, No. 05-CV-3039 (Dec. 13, 2005) (available at www.dol.gov/sol/media/briefs/LJSbrief-12-13-2005.htm) (stating that § 216(b) of FLSA "grants employees a distinct substantive right to participate in collective adjudication of their claims if, and only if, they provide a written consent that is filed in court") (emphasis added); see

also De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 310 (3d Cir. 2003) ("The aggregation of claims, particularly as class actions, profoundly affects the substantive rights of the parties to the litigation.")

Moreover, individuals cannot be deprived of that substantive right through a litigation that would bind them, as absent members of a representative class, when they did not affirmatively opt-in to the action.  See Prickett v. DeKalb County, 349 F.3d 1294, 1297 (11th Cir. 2003) ("The statute says, '[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party [and] [t]hat plain language indicates that plaintiffs do not opt-in or consent to join an action as to specific claims, but as to the action as a whole."); see also LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288 (5th Cir. 1975) (recognizing that under § 216(b), "no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class . . . .").

Similarly, Defendants have the separate substantive right to litigate claims for unpaid overtime only against individuals who bring or affirmatively opt-in to an action as a "party plaintiff."  See Hoffman-LaRoche v. Sperling, 493 U.S. 165, 173 (1989) (noting that the 1947 amendments to the FLSA were done for "the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions").  Defendants also have the corresponding right to not be bound by a judgment effectively adjudicating FLSA claims of absent class members.  See id.

The only New York regulation that purports to require overtime pay in New York, and thus which must be the basis for the Rule 23 class overtime claim, expressly incorporates the FLSA and its exemptions.  Specifically N.Y.C.R.R. § 142-2.2 requires overtime pay "in the manner and methods and subject to the exemptions of Section 7 and Section 13 of [the FLSA] . . . ."  12 N.Y.C.R.R. § 142-2.2 (2007).  Because of this incorporation, Plaintiff must necessarily establish a violation of the FLSA with respect to the absent members of the putative class if she is to establish liability under state law for those individuals.

Accordingly, if Plaintiff were permitted to pursue a state law overtime claim through an opt-

out class action, the FLSA claims of absent class members would necessarily be litigated on an opt-out basis in this litigation, even though those absent class members did not elect to opt-in to the action. Rulings with respect to exemption status and other issues under New York law, including whether Defendants did or did not violate the law, would bind absent class members with respect to their FLSA claims. For example, if Defendants are successful in establishing that Plaintiff and the absent class members she purports to represent were properly classified as exempt from overtime obligations, that ruling would extinguish the FLSA claims of absent class members because the latter would be bound by determinations made for the class, especially when it is considered that the same exemptions apply under New York law. Adjudicating the state law overtime claims of absent class members who did not affirmatively opt-in to this proceeding would, therefore, patently interfere with, and indeed eviscerate, the affirmative opt-in requirements of, and rights of the parties under, § 216(b) of the FLSA. This is precisely the result banned by Congress in enacting Section 216(b).

The threat of impermissibly extinguishing substantive rights under the FLSA was addressed in Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 921-22 (9th Cir. 2003), in which the Department of Labor sued under the FLSA for unpaid overtime on behalf of eight former employees. See id. at 911. The Ninth Circuit affirmed the dismissal of the FLSA claim of one of the eight employees because that employee had previously litigated a state law claim for overtime against her employer. See id. at 923. The Court found that the employee's FLSA claim was barred by *res judicata* because the FLSA claim was based on the same operative facts as the previously litigated state law claim. See id. at 921-923.[13] Therefore, the adjudication of absent class members' state law overtime claims would impermissibly extinguish their substantive rights to bring their own overtime actions under the FLSA. See, e.g., Robinson v. Sheriff of Cook County, 167 F.3d 1155, 1157 (7th Cir. 1999) (noting that dismissal of a class action has "*res judicata* effect on any unnamed class

---

[13]     See also Tran v. Le French Baker, Inc., No. C-94-0482, 1995 WL 374342, at *2 (N.D. Cal. Jun. 14, 1995) (holding that plaintiff who was previously awarded overtime pay under state law through a state administrative proceeding was *collaterally estopped* from pursuing a FLSA claim, even though the State Labor Commissioner "did not have jurisdiction to hear the FLSA claim" in those proceedings).

members who did not opt out") (citations omitted); <u>Gonzalez v. City of N.Y.</u>, 396 F. Supp. 2d 411 (S.D.N.Y. 2005) (holding that claims of police officers were bared by *res judicata* where the plaintiff officers were absent members of the class in a prior class action involving the same facts).

Likewise, "under New York's transactional approach to *res judicata*, once a claim is brought to final conclusion, all other claims arising out of the same transactions are barred, even if based on a different theory or seeking a different remedy." <u>Small v. Lorillard Tobacco Co.</u>, 679 N.Y.S.2d 593, 601 (App. Div. 1st Dep't 1998). Thus, the adjudication of an <u>absent</u> class member's state law overtime claim here would extinguish his or her rights under the FLSA. <u>See, e.g.</u>, <u>Gonzalez v. City of New York</u>, 396 F. Supp. 2d 411 (S.D.N.Y. 2005) (holding that discrimination claims of police officers were barred by *res judicata* where the Latino Officers Association previously brought a class action involving the same facts and where the plaintiff officers were absent members of the class).

In addition to granting employees the right not to be bound without their written consent, Congress granted employers the substantive right to defend claims for unpaid overtime only against individuals who bring or affirmatively opt into an action. <u>See Hoffman-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 173 (1989) (noting that the 1947 amendments to the FLSA were enacted for "the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions"). Permitting Plaintiff to use Rule 23 to litigate overtime claims on an opt-out basis would deprive Defendants of the right to have overtime claims adjudicated against them only on an opt-in basis, and only by individuals who actually opt in.

Rule 23's class action procedure must give way to the <u>substantive</u> rights conferred by Section 216(b), particularly where, as here, the claims under New York law incorporate the FLSA's "manner" and "methods." Were it otherwise, Plaintiff would be permitted to sidestep Section 216(b) by adjudicating the state law rights of absent class members under Rule 23 and, in turn, bind those absent class members with respect to their FLSA claims without their written consent.

**4.    Plaintiff's State Law Class Action Claim For Overtime Is Also Impliedly Preempted By Federal Law.**

Plaintiff's NYLL class action claim also should be dismissed because it is preempted by federal law, under the concept of "obstacle preemption."  A federal statute can preempt state law by an express preemption clause or through implied preemption.  /See Int'l Paper Co. v. Ouellette, 479 U.S. 481, 494 (1987).  State law claims are impliedly preempted where, as here, the pursuit of the state law claims would conflict with a policy embodied in federal law, or where the "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992) (citation omitted) (holding that federal OSHA statute preempted any state law establishing occupational health and safety standards in areas covered by OSHA); Anderson v. Sara Lee Corp., No. 05-1091, 2007 WL 4098229, at *9 (4th Cir. Nov. 19, 2007) (discussing the various types of preemption and holding that state law claims for alleged unpaid clothes changing time were preempted).  When a state law stands as an obstacle to the accomplishment of the full purposes and objectives of a federal law, that form of "implied" or "conflict preemption" is called "obstacle preemption."  Anderson, at *9.[14] Additionally, a federal law will preempt a state law even where the statutes share the same goal, if the state law "interferes with the methods by which the federal statute was designed to reach this goal."  Gade, 505 U.S. at 98 (emphasis added).

Under the doctrine of implied preemption, New York Federal and state courts have repeatedly held that even where a federal statute has no express provision regarding the preemption of state law remedies, those state law remedies are preempted by federal law if they conflict with the policies embodied in the federal law.  The Second Circuit's decision in Clean Air Mkts. Group v. Pataki, 338 F.3d 82 (2d Cir. 2003), aptly demonstrates the application of this doctrine.  There, the Court found that the Clean Air Act preempted New York's Air Pollution Mitigation Law ("APML").  Through the Clean Air Act, Congress set up an emission allocation system where utilities were granted a set number of emission allowances annually, which they could sell to "any

---

[14]    For purposes of this memorandum of law, the terms "implied," "conflict" and "obstacle" preemption are intended to have the same meaning and effect.

other person who holds such allowances." Id. at 84.  New York State passed the APML, which

included a provision that required states that sold their emission allowances to certain "upwind"

states to pay New York an amount of money equal to the sale price.  Id. at 85.  The Second Circuit

concluded that this particular provision of the state law was preempted:

> Even where federal and state statutes have a common goal, a state law will be preempted 'if it interferes with the methods by which the federal statute was designed to reach this goal.'  There can be no doubt that [the APML] interferes with the method selected by Congress for regulating SO2 emissions.

Id. at 87 (citing Ouellette, 479 U.S. at 494).[15]

Courts in this state have also previously invoked the doctrine of implied preemption in

holding that the FLSA preempts state law remedies.  For example, in Berry v. 34 Irving Place

Corp., 4 Wage & Hour Cas. (BNA) 564, 564 (S.D.N.Y. 1944), the plaintiff prevailed on his FLSA

claims and sought to recover an award of interest under New York state law.  Looking beyond the

plain language of the FLSA, the court looked to the intent of Congress in promulgating the

liquidated damages remedy under the FLSA.  Finding that liquidated damages were intended to

compensate workers for the loss of the use of their unpaid wages, the court held that the plaintiff

could not recover the state-law remedy of interest.  As the court explained:

> The statutory provision of the Fair Labor Standards Act for liquidated damages is designed to compensate for damages resulting from the retention of the workman's pay . . . which otherwise might be 'too obscure and difficult of proof.'  Nothing in the statute suggests anything but a legislative intention to provide a uniform rule as to such damages, a rule in no way dependent upon the varying standards and provisions of the several states.

Id.; Brooklyn Sav. Bank v. O'Neill, 324 U.S. 697, 715 (1945) (finding that Congress must have

intended to preclude the recovery of interest when it enacted the FLSA since an award of liquidated

damages serves a similar purpose); Choimbol v. Fairfield Resorts, Inc., No. 2:05cv463, 2006 WL

---

[15]    See also Guice v. Charles Schwab & Co., 674 N.E.2d 282, 290 (N.Y. 1996) (internal quotation marks and citation omitted) (holding that where a "State's regulation . . . adversely affects the ability of a Federal administrative agency to regulate comprehensively and with uniformity in accordance with the objectives of Congress, then the state law may be pre-empted even though collision between the state and federal regulation may not be an inevitable consequence"); Bantum v. Am. Stock Exch., LLC, 777 N.Y.S.2d 137, 138-40 (App. Div. 2d Dep't 2004) (holding that plaintiff's claims under New York State and City anti-discrimination laws were impliedly preempted by SEC regulations).

2631791, at *5 (E.D. Va. Sept. 11, 2006) ("[I]t is Congress' clear intent that the FLSA be the sole

remedy available to employees for enforcement of whatever rights he may have under the FLSA").

In this action, the FLSA impliedly preempts Plaintiff's purported NYLL opt-out class action

claim because enforcement of the state law through an opt-out class action would interfere with, and

present an obstacle to: (1) the detailed and elaborate enforcement scheme contained in the FLSA;

(2) the objectives and purposes of the FLSA; and (3) the methods set forth in the FLSA to achieve

those objectives. Specifically, in amending the FLSA Congress expressly found that the Act had

been judicially interpreted in a way that "creat[ed] wholly unexpected liabilities, immense in

amount," which could bring about the "financial ruin of many employers," and which would

provide employees with "windfall payments . . . for activities performed . . . without any

expectation of reward." 29 U.S.C. § 251(a). As a result, Congress created an exclusive method for

litigating group claims asserting an entitlement to overtime or minimum wages. See 29 U.S.C. §

216(b). See also Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1248 (11th Cir.

2003) (Congress created the "opt-in" language to "prevent large group actions, with their vast

allegations of liability, from being brought on behalf of employees who had no real involvement in,

or knowledge of the lawsuit") (internal quotations omitted); Anderson, at *11 ("Congress prescribed

exclusive remedies in the FLSA for violations of its mandates). Under the "opt-in" method,

employees must affirmatively opt-in to an action in order to obtain any recovery. 29 U.S.C.

§ 216(b). Opt-out actions are not permitted as they conflict with the express purpose of Congress in

avoiding "wholly unexpected liabilities" and "windfall payments." 29 U.S.C. § 251(a); see also

supra pp. 11-14.

The Fourth Circuit Court of Appeals recently addressed the issue of obstacle preemption in

the context of the FLSA and similar state law claims in Anderson. There, the plaintiff class sought

to bring claims of, inter alia, breach of contract and negligence, for the defendant's alleged failure to

pay certain wages. Anderson, at *2. The Court noted that Congress provided "an unusually

elaborate enforcement scheme" in the FLSA, which was intended to be the exclusive remedy for

violations of that Act. Anderson, at * 10-11 (citations omitted). Because the success of the class

members' state law claims depended upon establishing that the company violated the FLSA, but those claims carried with them far more generous remedies than allowed in the FLSA enforcement scheme, the question for the Court was whether allowing those claims to proceed would stand as an obstacle to the accomplishment of the full purposes and objectives of the FLSA. Id. at 10. The Fourth Circuit concluded that it would, and remanded the case so that the state law claims could be dismissed, and to allow the plaintiffs to pursue their claims under the FLSA. The court expressly noted that its "conclusion [was] consistent with the ruling of several district courts deeming state claims to be preempted by the FLSA where those claims have merely duplicated FLSA claims." Id. at 19.

As explained above, New York's legislature has never adopted a state overtime law. Instead, through its enforcement of New York's minimum wage law, New York's Department of Labor promulgated a regulation addressing overtime. See 12 N.Y.C.R.R § 142-2.2. However, New York's overtime regulation specifically incorporates the manner, methods, and exemptions of the FLSA. Id. Thus, a violation of the NYLL depends upon Plaintiffs establishing a violation of the FLSA. See N.Y.C.R.R. § 142-2.2. Accordingly, even absent class members who elect not to opt-in will still have their own FLSA claims adjudicated under *res judicata* and *collateral estoppel* principles, without their written consent, if the NYLL claims are prosecuted. This is the precise result Congress intended to ban when it enacted § 216(b), and directly conflicts with the purposes and objectives of Congress.[16]

Moreover, allowing the claim to proceed as an "opt-out" class would directly conflict with § 142-2.2, which requires that the "manner and methods" provided in the FLSA be used.[17]

---

[16]   The res judicata and collateral estoppel effect of a decision under 12 N.Y.C.R.R. § 142-2.2 cannot be disputed as a matter of law as the exact same facts and parties will be involved in both claims, as will the same applicable law. It also cannot be disputed that the remedies available under New York law exceed those permitted under the FLSA, given the six-year statute of limitations which Plaintiff claims applies to her NYLL claim - - a period three times as long as the applicable FLSA statute of limitations. Compare 29 U.S.C. § 255(a) (FLSA) with Complaint ¶ 36 (NYLL claim). See also 29 U.S.C. § 251(a) ("The Congress further finds that the varying and extended periods of time for which, under the laws of the several states, potential retroactive liability may be imposed upon employers, have given and will give rise to great difficulties in the sound and orderly conduct of business and industry.").

[17]       § 142-2.2 even directs the reader to a location where a copy of the FLSA may be obtained. 12 N.Y.C.R.R. § 142-2.2.

Specifically, § 216(b) of the FLSA is the exclusive method for enforcing Section 207 of the FLSA, under which Plaintiffs' claims for overtime are brought (see Complaint ¶¶ 87-90). See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable . . ."); Complaint ¶ 96 (asserting entitlement to relief "pursuant to 29 U.S.C. § 216(b)"). Section 216(b) allows only an opt-in method of recovery. 29 U.S.C. § 216(b)  ("An action to recover the liability presented in [Section 207] may be maintained . . . in any Federal or State court . . . [n]o employee shall be a party to any such action unless he gives his consent in writing to become such a party . . ."). Section 216(b) broadly covers any "action" to recover overtime liability, not just the FLSA claim in any action. Id. (emphasis added). Thus, allowing an opt-out class action would impermissibly render nugatory the "methods" language contained in § 142-2.2, which requires that New York's overtime regulation be enforced using the manner and methods contained in the FLSA. Therefore, Plaintiff's NYLL class action claim should be dismissed as creating an impermissible obstacle and, therefore, impliedly preempted by the FLSA.[18]

### 5. An Opt-Out Class Action Under Rule 23 Is Not Superior To Other Available Methods For Adjudication.

Plaintiff's NYLL class action claim should also be dismissed because an opt-out class action is not superior to other available methods for adjudication of those claims – namely, an opt-in collective action under Section 216(b) of the FLSA.[19]

Presumably, Plaintiff will seek class certification under Rule 23(b)(3) for her class action claim for monetary relief. See Barnes v. Am. Tobacco Co., 161 F.3d 127, 142 (3d Cir. 1998) (Rule

---

[18]     Defendants do not contend that the FLSA preempts Plaintiff's own individual NYLL claim for overtime. Defendants contend only that Plaintiff cannot proceed with her state law overtime claim on an opt-out class basis, because doing so is precluded by Section 216(b).

[19]     Orders striking class allegations – expressly contemplated under Rule 23(d)(4) – are "procedurally inseparable" from Rule 23(c)(1), which provides that "when a person sues or is sued as a representative of a class, the court must – at an early practicable time – determine by order whether to certify the action as a class action." 7B Charles Alan Wright et al., Federal Practice & Procedure § 1795 (3d ed. 2005) (quoting Fed. R. Civ. P. 23(c)(1)). Either party may move for a determination under Rule 23, and the Court need not wait for Plaintiffs to file a motion for class certification before rendering its decision on this issue. Id. § 1785. See also Connolly v. McCall, 254 F.3d 36, 42 (2d Cir. 2001) (affirming the dismissal of a class claim "on the pleadings and prior to discovery"). See supra pp. 3-4.

23(b)(2) certification is only appropriate in actions "seeking primarily injunctive or corresponding declaratory relief"). A court may certify a class under Rule 23(b)(3) only if it finds that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). See also Mike v. Safeco Ins. Co. of Am., 223 F.R.D. 50, 52 (D. Conn. 2004) (finding class action was not the superior method of adjudicating the claims in the complaint).[20] In evaluating whether a class action is superior, a court should consider, *inter alia*, "the interest of the members of the class in individually controlling the prosecution or defense of separate actions" and "the difficulties likely to be encountered in the management of a class action." Fogarazzao v. Lehman Bros., Inc., 232 F.R.D. 176, 182 (S.D.N.Y. 2005) (citing Fed. R. Civ. P. 23(b)(3)). To find superiority, a court must determine that all other methods of resolving the issues in the case are inferior to a class action under Rule 23. Schwartz v. Dana Corp./Parish Div., 196 F.R.D. 275, 285 (E.D. Pa. 2000).

An opt-out class action under Rule 23 is not superior to the FLSA's opt-in method of adjudication. As discussed above, permitting Plaintiff's state law claim for overtime to go forward under Rule 23 would thwart Congressional intent and abridge the substantive rights of absent class members and Defendants to have all substantive claims adjudicated under the FLSA's opt-in mechanism. Edwards v. City of Long Beach, 467 F. Supp. 2d 986, 993 (C.D. Cal. 2006) (denying certification of state law overtime claims because "allowing both a § 216(b) collective action and a Rule 23 class action to proceed would frustrate the purpose of requiring plaintiffs to affirmatively opt-in to § 216(b) collective actions."); McClain v. Leona's Pizzeria, Inc., 222 F.R.D. 574, 578 (N.D. Ill. 2004) (ruling that a state law class action "is not the superior manner in which to proceed" because "[h]olding otherwise would undermine Congress's directive that FLSA collective actions are limited to those parties who opt in to the action"). In contrast, requiring individuals who wish to participate to join the suit as party plaintiffs affords these individuals greater control over their

---

[20]     For purposes of this Motion, Defendants only address the requirement of superiority under Rule 23(b) on the purely legal ground of whether Plaintiff can maintain opt-out class claims for overtime in the face of Section 216(b)'s opt-in mechanism. Defendants reserve all other arguments relating to the other requirements of Rule 23 for an appropriate time in the future.

participation in the litigation than would an opt-out action.  For example:

> [T]he FLSA suit provides a means of participation for individuals who truly wish to join the suit, while requiring no action from those who do not wish to join.  By contrast, a Rule 23 class requires that a potential class member take affirmative action not to be bound by the judgment.

Leuthold, 224 F.R.D. at 469-70.  See also Muecke v. A-Reliable Auto Parts and Wreckers, Inc., No. 01 C 2361, 2002 WL 1359411 at *2 (N.D. Ill. June 21, 2002) (because class members have an opportunity to decide whether to opt into the FLSA collective action, "it makes no real sense to the Court to certify a class that will *automatically* include all of the employees unless they opt out") (emphasis in original).

Moreover, enabling Plaintiff to pursue her state law overtime claim as an opt-out action simultaneously with her opt-in action under the FLSA would create challenges with respect to manageability of the action.  For example, asking potential class members – who are not attorneys, but laypersons – both to opt-in and to opt-out with respect to the same substantive claim (a claim for overtime) would likely cause considerable confusion.  Leuthold, 224 F.R.D. at 470 ("Confusion would likely result in asking potential plaintiffs both to opt in and to opt out of the claims in this suit."); see also McClain, 222 F.R.D. at 577 ("it may be confusing for a potential class member to receive a notice indicating that they must opt out of some claims and opt in to others").

For these reasons, numerous courts have refused to certify a state law wage and hour class action under Rule 23 after concluding that the opt-in method of adjudication set forth in the FLSA is superior to an opt-out class action.  Edwards, 2006 WL 3775941, at *5 (certification of state overtime claims was not superior means of adjudicating action); McClain, 222 F.R.D. at 578 (same); Muecke, 2002 WL 1359411, at *2 (N.D. Ill. June 21, 2002) (same); Hasken v. City of Louisville, 213 F.R.D. 280, 282 (W.D. Ky. 2003) (finding "that a class action is not a superior method" for adjudicating plaintiff's state law overtime claims).

In short, to the extent that collective adjudication would even be appropriate, there exists an alternative method for adjudicating Plaintiff's state law claim for overtime that is superior to proceeding as an opt-out Rule 23 class action.  As a result, Defendants respectfully ask the Court to

strike Plaintiff's state law class action claim.

## CONCLUSION

Plaintiff's attempt to bring a class action claim under the NYLL is precluded by CPLR § 901(b). Plaintiff's attempt to assert a state law class action claim for overtime under Rule 23 also inherently conflicts with the express written consent requirement that Congress mandated for actions under the FLSA, is impliedly preempted by the FLSA, and fails the Rule 23 superiority requirement. Thus, the Court should strike Plaintiff's NYLL class action claim.

Dated: November 26, 2007
     New York, New York           Respectfully submitted,

           MORGAN, LEWIS & BOCKIUS LLP

           By:   /s/ Leni D. Battaglia
              Christopher A. Parlo
              Leni D. Battaglia
           101 Park Avenue
           New York, New York 10178-0060
           (212) 309-6000
           (212) 309-6001 (fax)

           Counsel for Defendants
             Clear Channel Communications, Inc. and
             Clear Channel Outdoor Holdings, Inc.