IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

HYLA GOLD, on behalf of herself and all others
similarly situated,

Plaintiff,

v.                                                        No. 1:07-CV-08204-DLC

CLEAR CHANNEL COMMUNICATIONS, INC. and
CLEAR CHANNEL OUTDOOR HOLDINGS, INC,

Defendants.

## DEFENDANT'S MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR
## RECONSIDERATION OF THE DECISION ON HER MOTION TO COMPEL

MORGAN, LEWIS & BOCKIUS LLP
Christopher A. Parlo (CP-4310)
Leni D. Battaglia (LB-4704)
101 Park Avenue
New York, New York 10178-0060
(212) 309-6000
(212) 309-6001 (fax)

MORGAN, LEWIS & BOCKIUS LLP
Michael J. Puma (MP-5573)
1701 Market Street
Philadelphia, Pennsylvania 19103-2217
(215) 963-5000
(215) 963-5001 (fax)

Counsel for Defendants
    Clear Channel Communications, Inc. and
    Clear Channel Outdoor Holdings, Inc.

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND ........................................................ 1

ARGUMENT ...................................................................................................................... 4

I.      A MOTION FOR RECONSIDERATION SHOULD BE GRANTED ONLY IN
        RARE INSTANCES WHERE A COURT HAS IGNORED CONTROLLING
        AUTHORITY ........................................................................................................ 4

II.     PLAINTIFF'S DEMAND FOR CONTACT INFORMATION OF HUNDREDS
        OF PUTATIVE COLLECTIVE AND CLASS ACTION MEMBERS ALSO
        VIOLATED THE PARTIES' DISCOVERY AGREEMENT. .............................. 5

III.    PLAINTIFF'S DEMAND FOR CONTACT INFORMATION SHOULD BE
        DENIED TO THE EXTENT THAT PLAINTIFF NOW CLAIMS THAT SUCH
        INFORMATION IS SOUGHT ONLY FOR SETTLEMENT DISCUSSIONS. .... 5

IV.     PLAINTIFF'S DEMAND FOR CONTACT INFORMATION WAS PROPERLY
        DENIED AS IT THREATENED TO CIRCUMVENT THE JUDICIALLY
        SUPERVISED NOTICE PROCEDURE MANDATED BY THE FLSA ............... 6

        A.      Courts Do Not Permit Discovery Of Putative Collective Class Member
                Contact Information Because A Plaintiff Could Then Circumvent The
                Court-Supervised Notice Process Mandated By The FLSA .................... 6

        B.      By Her Own Admissions, Plaintiff Cannot Possibly Satisfy The Standard
                For Notice And Conditional Certification Under The FLSA. .................. 9

                1.      Plaintiff Cannot Show That Other Employees Wish To Join This
                        Action .......................................................................................... 9

                2.      Plaintiff Cannot Show That She Is Similarly Situated To Anyone ......... 10

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

Allen v. Accredited Home Lenders, No. 3-06-0921,
  2007 U.S. Dist. LEXIS 87259 (M.D. Tenn. Apr. 23, 2007)..........................................8

Amy Acelrod, Inc. v. Simon & Schuster, Inc., No. 07 Civ. 891 (DLC),
  2007 WL 3010034 (S.D.N.Y. Oct. 16, 2007)....................................................................4

Armstrong v. Weichert Realtors, No. Civ.A.05-3120,
  2006 WL 1455781 (D.N.J. May 19, 2006)......................................................................11

Bodner v. Oreck Direct, LLC, No. 06-4756,
  2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) ................................................................14

Brooks v. Bellsouth Telecomms., Inc., 164 F.R.D. 561 (N.D. Ala. 1995).........................7

Caridad v. Metro-N. Commuter R.R., 191 F.3d 283 (2d. Cir. 1999) .................................8

Crawford v. Dothan City Bd. of Educators, 214 F.R.D. 694 (M.D. Ala. 2003).................6

Davis v. Charoen Pokphand, Inc., 303 F. Supp. 2d 1272 (M.D. Ala. 2004) ...................10

EEOC v. Lexus of Serramonte, No. C 05-0962,
  2006 U.S. Dist. LEXIS 66438 (N.D. Cal. Sept. 5, 2006) ..............................................9

Evancho v. Sanofi-Aventis, No. 07-cv-02266,
  2007 WL 4546100 (D.N.J. Dec. 19, 2007).....................................................................10

Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941 (W.D. Ark. 2003).....................11

H&R Block, Ltd. v. Housden, 186 F.R.D. 399 (E.D. Tex. Jun. 23, 1999).........................7

Hall v. Burk, No. Civ. 301CV2487H,
  2002 WL 413901 (N.D. Tex. Mar. 11, 2002) ..................................................................7

Haynes v. Singer Co., 696 F.2d 884 (11th Cir. 1983) ................................................6, 10

Hill v. Gristede's Operating Corp., 1:06-cv-10197 (LTS/HP),
  docket no. 48, (S.D.N.Y. Feb. 1, 2008) ...........................................................................8

Kane v. Gage Merch. Servs., Inc., 138 F.Supp.2d 212 (D. Mass. 2001)...........................8

King v. West Corp., 2006 WL 118577 (D. Neb. Jan. 13, 2006) .......................................10

Mackenzie v. Kindred Hosps. E., L.L.C., 276 F. Supp. 2d 1211 (M.D. Fla. 2003) ..........10

Olivo v. GMAC Mortgage Corp., 374 F. Supp. 2d 545 (E.D. Mich. Apr. 1, 2004)............7

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978)......................................................7

Putnam v. Eli Lilly & Co., 508 F. Supp. 2d 812 (C.D. Cal. 2007)........................................8

Ritchie Capital Mgmt., LLC v. Coventry First LLC,
No. 07 Civ. 3494 (DLC), 2008 WL 542596 (S.D.N.Y. Feb. 29, 2008) ..............................4

Severtson v. Phillips Beverage Co., 137 F.R.D. 264 (D. Minn. 1991)................................7

Smith v. Sovereign Bancorp, Inc., No. Civ. A. 03-2420,
2003 WL 22701017 (E.D. Pa. 2003) ..............................................................................6

Tucker v. Labor Leasing, Inc., 155 F.R.D. 687 (M.D. Fla. 1994)........................................8

Wiegele v. FedEx Ground Pkg. Sys., No. 06-CV-01330-JM (POR),
2007 U.S. Dist. LEXIS 9444 (S.D. Cal Feb. 8, 2007) ..................................................9

## STATUTES

29 U.S.C. § 216(b) ..............................................................................................................7, 8

## PRELIMINARY STATEMENT

Plaintiff's Motion for Reconsideration (the "Motion") merely restates the same arguments already rejected by the Court. Plaintiff cites no newly issued controlling authority, or existing controlling authority that is contrary to the Court's ruling and that the Court ignored, which she must identify to succeed on a motion for reconsideration. Moreover, Plaintiff's recent deposition testimony confirms that Plaintiff has absolutely no legitimate basis to seek court-approved notice and conditional certification of her Fair Labor Standards Act ("FLSA") claims. Therefore, production of contact information, to be used solely to solicit other allegedly "similarly situated" employees to join this action, is improper. For these reasons, the Motion should be denied.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff worked for Defendants as a National Sales Service Account Executive (also known as a National Import Account Executive) ("NSSAE"). In addition, Plaintiff temporarily performed a limited number of the duties of a co-worker employed as a Local Account Executive[1] ("AE") for a short period while he was out on disability leave for cancer treatment. When he returned, Plaintiff took on a new role as a New Business Development Account Executive ("NBDAE").

The parties agreed to conduct an initial period of limited discovery for the purpose of facilitating a settlement conference. Defendants agreed to provide Plaintiff with discovery regarding her individual claim, and to voluntarily compile and prepare a chart of the dates of employment, job titles, and compensation data for all of the NSSAEs who potentially could be part of any putative class and collective action. Defendants and their counsel spent nearly a hundred hours compiling this information so that a settlement analysis on the NSSAEs could be prepared by Plaintiff.

---

[1] Local Account Executive refers to those employees directly selling outdoor advertising to locally based agencies and companies, who themselves are both local and national in scope.

The chart, which Defendants produced to Plaintiff and which can be provided to the Court under seal if the Court desires, conclusively demonstrates that the hallmark of the NSSAE position is the dissimilarity across offices, as individuals performing "National Sales Service" or "Import" functions have held numerous titles, including (unlike Plaintiff) various managerial and director positions. Moreover, this chart reflects that, even if Plaintiff could establish that anyone is similarly situated to her, during the entire applicable limitation period there have been less than 20 potential New York state law class action members – precluding any class certification.

Despite these significant hurdles to any attempt by Plaintiff to show: (1) that she is "similarly situated" to any other employee for purposes of conditional certification under the FLSA; and (2) that she can meet the numerosity, commonality, typicality, predominance, and other requirements under Rule 23 for certification of a New York class, Defendants have continued to leave the door open to discussing a settlement involving the NSSAEs. However, now recognizing the problems involved with seeking to collectively litigate the claims of that group (including the small size and dissimilarity of the group she claims to represent), and instead of pursuing settlement discussions on the NSSAE position in good faith as the parties agreed would be their goal, Plaintiff has launched an *in terrorem* campaign to drive up the cost of litigation and thereby, hopefully, cause a better settlement, by demanding contact information for the AEs. Defendants will not, however, discuss any settlement for AEs and never would have agreed to a settlement process if Plaintiff had stated that AEs were her goal.

Specifically, Plaintiff alleged in both the Complaint and proposed Amended Complaint that only one group of individuals was improperly "misclassified" as exempt from federal and state overtime requirements – the NSSAEs. See Complaint ¶ 59 ("As a Sales Service Account Executive, Gold was misclassified as an exempt employee"). Despite this binding declaration, Plaintiff now demands contact information concerning a totally different group of individuals, AEs

2

across the country – a group for which Plaintiff admits she has no first-hand knowledge, and which has never, in the history of the FLSA, been found by any court or any state or federal agency to be a non-exempt position.

In an attempt to resolve this dispute without the need for judicial intervention, Defendants repeatedly requested that Plaintiff identify a single case, opinion letter, regulation, treatise, article or other source that has ever found that AEs, who sell outdoor advertising space and often make well over $100,000 each year, are non-exempt. Plaintiff has not identified a single authority and, instead, her letter Motion to Compel cited only to her unspecified "initial investigation."

Plaintiff then demanded contact information for the hundreds of AEs who Plaintiff contends are members of her putative collective action under the FLSA.[2] Plaintiff argued that such information was necessary both for settlement discussions and for Plaintiff to meet her burden on conditional certification.[3] The Court rejected Plaintiff's attempt to circumvent the judicially supervised notice procedure mandated by the FLSA, stating: "I am not going to give you discovery of the contact information because that is the whole point of whether or not notice can be provided." Transcript at 15.[4] Without citing any new authority, Plaintiff's Motion now simply repeats the same arguments already presented to the Court in Plaintiff's letter motion and during two teleconferences (see, e.g., Transcript at 15-16). Therefore, the Motion should be denied.

---

[2]  Although framed as a Motion for Reconsideration, Plaintiff actually now demands contact information from a much broader group of individuals than Local Account Executives, including all National Sales Service Account Executives (also known as National Import Account Executives) and others. Thus, her motion is really the same motion to compel but for contact information of an even broader group of individuals.

[3]  Plaintiff now asserts that this information is only necessary for settlement purposes.

[4]  A true and correct copy of the complete transcript of the parties' teleconferences with the Court on March 7, 2008, is attached hereto as Exhibit ("Exh.") A. Plaintiff's Motion attached only three pages, which Plaintiff described as the "pertinent pages," while excluding the portions most relevant to the Motion.

3

## ARGUMENT

I.    **A MOTION FOR RECONSIDERATION SHOULD BE GRANTED ONLY IN RARE INSTANCES WHERE A COURT HAS IGNORED CONTROLLING AUTHORITY.**

"The standard for a motion for reconsideration is strict, and 'reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" Ritchie Capital Mgmt., LLC v. Coventry First LLC, No. 07 Civ. 3494 (DLC), 2008 WL 542596, at *2 (S.D.N.Y. Feb. 29, 2008) (Cote, J.) (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). "Reconsideration 'should not be granted where the moving party seeks solely to relitigate an issue already decided,' nor may the moving party 'advance new facts, issues or arguments not previously presented to the Court.'" Id. (citing Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999)). In particular, a motion for reconsideration under Local Rule 6.3 "is to be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly construed by the court." Amy Acelrod, Inc. v. Simon & Schuster, Inc., No. 07 Civ. 891 (DLC), 2007 WL 3010034, at *1-2 (S.D.N.Y. Oct. 16, 2007) (Cote, J.) (citing Zoll v. Jordache Enters. Inc., No. 01 Civ. 1339, 2003 WL 1964054, at *2 (S.D.N.Y. Apr. 24, 2003) (internal citations omitted)). "The decision to grant or deny the motion is within the sound discretion of the district court." Id.

Ignoring the standards set forth by the Second Circuit and this Court, Plaintiff's Motion attempts precisely what is prohibited on a motion for reconsideration – the re-litigation of the same issues already decided by the Court, without identifying any controlling authority contrary to the Court's decision. This attempt should not be countenanced, and Plaintiff's Motion should be denied.

II. **PLAINTIFF'S DEMAND FOR CONTACT INFORMATION OF HUNDREDS OF PUTATIVE COLLECTIVE AND CLASS ACTION MEMBERS ALSO VIOLATED THE PARTIES' DISCOVERY AGREEMENT.**

Plaintiff's Motion should also be denied because Defendants' agreement to voluntarily provide the data contained in its chart (as well as other discovery), and to toll the statute of limitations for any NSSAE who opts into the case and/or participates in any settlement, was specifically conditioned upon Plaintiff not immediately pursuing full blown class discovery or filing a motion for notice and conditional certification. See Joint Discovery Plan (attached hereto as Exh. B) ¶ B.5; Kennedy Dep. at 96-97 (conclusions by the Court regarding the scope of discovery at this stage of the litigation being governed by the parties' agreement on a settlement effort).[5] In contravention of that agreement, Plaintiff's letter Motion to Compel effectively sought notice and conditional certification by demanding private addresses and phone numbers for hundreds of individuals across the country so that she may solicit them to join the action. That demand contrasts sharply with the parties' limited discovery agreement, and Plaintiff's Motion was properly denied for that additional reason.

III. **PLAINTIFF'S DEMAND FOR CONTACT INFORMATION SHOULD BE DENIED TO THE EXTENT THAT PLAINTIFF NOW CLAIMS THAT SUCH INFORMATION IS SOUGHT ONLY FOR SETTLEMENT DISCUSSIONS.**

Plaintiff's Motion also should be denied because she now contends that she seeks contact information only for purposes of facilitating settlement discussions – for a group of employees for which Defendants have not agreed to have any settlement discussions. Memorandum of Law in support of the Motion ("Pl's Mem.") at 2-3, 5. However, Plaintiff previously argued that this information was needed not for settlement only, but to enable her to move for class and collective certification (see Transcript at 15). Plaintiff should not now, in the guise of a motion for

---

[5] A true and correct copy of the cited portions of the transcript of the deposition of Timothy Kennedy, dated April 2, 2008 ("Kennedy Dep.") is attached hereto as Exh. C, including the relevant portions of the teleconference with the Court.

reconsideration, be allowed to completely change her position. Moreover, Defendants have made it clear that they have no interest in settling the alleged claim of hundreds of Local AEs for whom Plaintiff now demands contact information. Transcript at 8. Accordingly, if Plaintiff really is seeking AE contact information solely for settlement purposes, the request should be denied because there will be no settlement discussions for this group, and thus there is no need for the contact information. For this additional reason, the Motion should be denied.

## IV.    PLAINTIFF'S DEMAND FOR CONTACT INFORMATION WAS PROPERLY DENIED AS IT THREATENED TO CIRCUMVENT THE JUDICIALLY SUPERVISED NOTICE PROCEDURE MANDATED BY THE FLSA.

As the Court recognized, Plaintiffs' letter Motion to Compel sought to circumvent the court-supervised notice process under the FLSA, under which Plaintiff could not obtain contact information absent proof that: (1) Local AEs, NSSAEs or others exist who want to join the action; and (2) such individuals are similarly situated to the Plaintiff. See, e.g., Haynes v. Singer Co., 696 F.2d 884, 887 (11th Cir. 1983) (affirming dismissal of collective action where the only evidence that others desired to opt-in was based on "unsupported assertions"); Smith v. Sovereign Bancorp, Inc., No. Civ. A. 03-2420, 2003 WL 22701017, at *2-3 (E.D. Pa. 2003) (the potential opt-ins must be similarly situated). Plaintiff cannot make that showing, so a request for contact information was properly denied.

### A.    Courts Do Not Permit Discovery Of Putative Collective Class Member Contact Information Because A Plaintiff Could Then Circumvent The Court-Supervised Notice Process Mandated By The FLSA.

Plaintiff's tactic of trying to avoid the scrutiny which would be applied to a proper motion for conditional certification has been rejected by numerous courts, which have held that a plaintiff may not circumvent the judicial notice process under § 216(b) of the FLSA by obtaining notice through discovery. See Crawford v. Dothan City Bd. of Educators, 214 F.R.D. 694 (M.D. Ala. 2003) (concluding that discovery of names and addresses of purported class members was

premature where no collective action had been conditionally certified); Olivo v. GMAC Mortgage

Corp., 374 F. Supp. 2d 545 (E.D. Mich. Apr. 1, 2004) (rejecting demand for discovery of names and

addresses where plaintiffs failed to meet the "similarly situated" standard); Brooks v. Bellsouth

Telecomms., Inc., 164 F.R.D. 561, 571 (N.D. Ala. 1995) (concluding that discovery of names and

addresses of purported class members was improper where no collective action had been

conditionally certified); Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 266-67 (D. Minn.

1991) (concluding that plaintiffs could not take advantage of court-authorized notice to locate

plaintiffs and expand the scope of the litigation without providing colorable basis that "similarly

situated" plaintiffs exist, particularly where defendant had provided evidence to the contrary); Hall

v. Burk, No. Civ. 301CV2487H, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002) (rejecting

plaintiff's motion for discovery where plaintiff failed to meet the "similarly situated" standard);

H&R Block, Ltd. v. Housden, 186 F.R.D. 399, 400-01 (E.D. Tex. Jun. 23, 1999) (concluding that

courts have a responsibility to "refrain from stirring up unwarranted litigation" and burdening

employers with "a frivolous fishing expedition" where plaintiffs failed to meet the "similarly

situated" standard) (citing D'Anna v. M/A-COM, Inc., 903 F. Supp. 889, 894 (D. Md. 1995)).

Plaintiff purports to cite caselaw to the contrary, but those decisions are readily

distinguishable and, most significant, none of them provides controlling authority supporting

Plaintiff's arguments. The controlling decision in Oppenheimer Fund, Inc. v. Sanders, 437 U.S.

340, 351 n.20 (1978), does state in dicta that "[t]here may be [some] instances where [class

members' contact] information could be relevant to issues that arise under Rule 23" (emphasis

added). That case, however, did not include any FLSA collective action claims and, thus, did not

involve the concerns present here with Plaintiff's ability to circumvent the specific notice process

mandated by 29 U.S.C. § 216(b). Moreover, the Supreme Court itself "doubted whether any

[legitimate discovery] purposes would require compilation of the names and addresses of all

7

members of a large class" (emphasis added), and specifically concluded that disclosure of contact

information was inappropriate where, as appears to be the goal here, plaintiffs sought the putative

class members names and address to send notice. See id. The other controlling decision cited by

Plaintiff, Caridad v. Metro-N. Commuter R.R., 191 F.3d 283, 292 (2d. Cir. 1999), also did not

involve the notice process of 29 U.S.C. § 216(b). The Caridad decision also does not have anything

to do with a demand for contact information of putative class members. Similarly, Putnam v. Eli

Lilly & Co., 508 F. Supp. 2d 812 (C.D. Cal. 2007), and the unpublished decision in Hill v.

Gristede's Operating Corp., 1:06-cv-10197 (LTS/HP), docket no. 48 (S.D.N.Y. Feb. 1, 2008),

involved Rule 23, and not the specialized opt-in procedure of 29 U.S.C. § 216(b). Allen v.

Accredited Home Lenders, No. 3-06-0921, 2007 U.S. Dist. LEXIS 87259, at *4 (M.D. Tenn. Apr.

23, 2007), involved only an individual action rather than collective action claims under the FLSA.

Thus, the concerns associated with a plaintiff attempting to circumvent the specific opt-in notice

procedure under the FLSA was not present in a single one of these that case.

The other decisions cited by Plaintiff either do not stand for the proposition for which they

are cited, or are limited by their facts. In Kane v. Gage Merch. Servs., Inc., 138 F.Supp.2d 212, 215

(D. Mass. 2001), the court only ordered defendant to provide names and addresses of its employees

simultaneous with its granting of conditional certification after a fully briefed notice motion. Here,

there has been no order (or even a motion) on conditional certification. Indeed, it is precisely that

step (and her burden associated therewith) that Plaintiff evidently seeks to avoid. In Tucker v.

Labor Leasing, Inc., 155 F.R.D. 687, 690 (M.D. Fla. 1994), although the court ordered defendants

to provide contact information of similarly-situated current employees, plaintiffs already had filed a

motion to approve notice to the putative class and the court prohibited plaintiffs from having any

contact with the employees "without prior leave of court." Here, Plaintiff has filed no such motion,

has not made any showing that she is similarly situated to any other employee, and seeks to

8

affirmatively solicit the individuals to join her action.  In EEOC v. Lexus of Serramonte, No. C 05-0962, 2006 U.S. Dist. LEXIS 66438, at *14 (N.D. Cal. Sept. 5, 2006), due only to the involvement of the EEOC, the court explicitly stated that it was treating the discovery request "as if class certification had already been granted," because of the specific enforcement powers Congress bestowed upon the EEOC in the public interest – circumstances not present here.  Finally, in Wiegele v. FedEx Ground Pkg. Sys., No. 06-CV-01330-JM (POR), 2007 U.S. Dist. LEXIS 9444 (S.D. Cal Feb. 8, 2007), a diversity case governed by state law, the court not only did not address any of the arguments present here, but the court's decision was based on California Constitutional privacy law.   In sum, the cases cited by Plaintiff fall far short of supporting her claim that courts "routinely" order the production of contact information under the circumstances present in this action.

**B.    By Her Own Admissions, Plaintiff Cannot Possibly Satisfy The Standard For Notice And Conditional Certification Under The FLSA.**

The Court's denial of Plaintiff's demand for contact information was particularly appropriate because, unlike some of the decisions cited in the Plaintiff's Motion, Plaintiff has done nothing to satisfy the two requirements described above for notice and conditional certification under the FLSA.  See supra Part IV.A. (requiring a showing that other individuals want to join the action and that they are all similarly situated).  Moreover, Plaintiff's admissions during her recent deposition confirm that she can never meet those requirements.

**1.    Plaintiff Cannot Show That Other Employees Wish To Join This Action.**

As to the first requirement, Plaintiff has not even speculated (let alone proven) that there are any other individuals interested in joining the litigation – and it is telling that no case has ever been reported in which individuals selling outdoor advertising space have sought to challenge their exempt status.  Plaintiff admits that she has discussed her claims with only three employees, all of

whom are in New York, and none of whom have joined the action. Pl. Dep. at 55.[6] Plaintiff also

acknowledges that she has no evidence that any other employee wishes to join this case. Pl. Dep.

at 57. Absent such evidence, notice and conditional certification must be denied. See, e.g., Haynes,

696 F.2d at 887 (affirming dismissal of collective action where the only evidence that others desired

to opt-in was based on "unsupported assertions"); Davis v. Charoen Pokphand, Inc., 303 F. Supp.

2d 1272, 1277 (M.D. Ala. 2004) (denying certification and notice because plaintiffs had not

presented any affidavits from other potential plaintiffs and had instead relied only on the testimony

of the named plaintiff that other employees wished to join the suit); Mackenzie v. Kindred Hosps.

E., L.L.C., 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) (holding that "unsupported expectations

that additional plaintiffs will subsequently come forward" are insufficient to justify notice).

### 2.   Plaintiff Cannot Show That She Is Similarly Situated To Anyone.

As to the second requirement, Plaintiff offers no facts to even suggest that she was similarly

situated to any other employee, other than an unsupported reference to her counsel's "initial

investigation." In addition to any such suggestion being legally and factually inadmissible and

without merit (which Defendant would demonstrate if it is compelled to brief the issue of notice and

conditional certification), such a conclusory allegation is plainly insufficient to meet the "similarly

situated" standard required before any notice could be issued, or disclosure of highly personal and

confidential contact information could be compelled. See, e.g., Evancho v. Sanofi-Aventis, No. 07-

cv-02266 (D.N.J. Dec. 19, 2007) (denying conditional certification and notice, despite plaintiffs'

allegation that they were similarly situated, because they were all improperly classified as exempt,

given that there were differences among the plaintiffs job responsibilities and duties); King v. West

Corp., 2006 WL 118577 at *14 (D. Neb. Jan. 13, 2006) ("Merely showing that the employer

---

[6]   A true and correct copy of the transcript of the relevant portions of the deposition of Plaintiff Hyla Gold
dated March 25, 2008 ("Pl. Dep.") is attached hereto as Exh. D.

classified a group of employees as exempt is not sufficient to establish that these employees are similarly situated for the purposes of an FLSA collective action."); Armstrong v. Weichert Realtors, No. Civ.A.05-3120, 2006 WL 1455781, at *1-*2 (D.N.J. May 19, 2006) (denying motion for notice and conditional class certification and holding that a single affidavit by the named plaintiff was insufficient to constitute a factual showing that there was a class of similarly situated employees under Section 216(b) because it merely contained conclusory allegations); Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941, 945-46 (W.D. Ark. 2003) (denying motion for certification and notice, holding that plaintiff claiming employees were misclassified as exempt under the FLSA failed to make minimal evidentiary showing that he is "similarly situated" because he failed to show that his duties were generally comparable to the rest of the proposed class).

Plaintiff's own deposition testimony confirmed the utter lack of evidence that she is similarly situated to any of the other employees across the country that she purports to represent. Indeed, **Plaintiff admits that she has no documents or other information, other than her personal belief, that there are any employees similarly situated to her and who were improperly paid by Defendants.** Pl. Dep. 329-30. Similarly, in contrast to what would be expected to support broad class and collective action claims, **Plaintiff cannot identify any "common policy or plan," as alleged in the Complaint, to improperly pay Plaintiff and employees who allegedly are similarly situated to her.** Pl. Dep. 333-34.[7]

Plaintiff gave numerous other admissions with respect to the positions she has held for Defendants demonstrating that she utterly lacks knowledge or other evidence to show that any other employees are similarly situated to her. With respect to her former NSSAE position, she admits:

---

[7] Outdoor's New York market president, Tim Kennedy, confirmed the absence of common control over, and the independence of, the various Clear Channel Outdoor geographic markets, specifically their varied operating structure. In addition, markets create their own management structure based on individualized market needs. For example, one person may be assigned two or more job functions in a small market, while only one person may be assigned to each job function in a larger market. Kennedy Dep. 66-67, 99.

- There are only two NSSAEs in Plaintiff's New York market, and her testimony (discussed below) makes clear that she knows little to nothing about the duties of NSSAEs elsewhere. Pl. Dep. 158-59.

- She knows nothing about the educational and work experience of NSSAEs in other markets across the country. Pl. Dep. 173.

- She knows nothing about the extent of supervision of NSSAEs in other markets across the country. Pl. Dep. 172.

- She does not know what NSSAEs in other markets across the country do on a day-to-day basis. Pl. Dep. 151-53.

- She does not know whether NSSAEs in other markets across the country take clients on "market rides" like she does. Pl. Dep. 155-56.

- She does not know whether, unlike her, some NSSAEs in other markets across the country supervise employees or even manage some of the office's operations. Pl. Dep. 156-57, 161-62, 174. In fact, she does not even know if one or more NSSAEs in her own market do so. Pl. Dep. 162.

- She does not know whether, unlike her, some NSSAEs in other markets across the country perform both NSSAE and National or Local AE duties. Pl. Dep. 157-58, 174. Nor does she know the percentage of time that various employees commit to each of these duties. Pl. Dep. 162-3.

- She does not know whether, unlike her, some NSSAEs in other markets across the country travel outside of their markets to develop business. Pl. Dep. 163.

- She does not know whether, unlike her, some NSSAEs in other markets across the country set the "rate cards" (baseline prices for outdoor advertising) for their markets. Pl. Dep. 164-65.

- She does not know whether, unlike her, some NSSAEs in other markets across the country also perform "charting" (management of outdoor advertising inventory) responsibilities for their markets. Pl. Dep. 164-65.

- She does not know whether, unlike her, some NSSAEs in other markets across the country are responsible for auditing the outdoor advertising in their markets. Pl. Dep. 164-65.

- She does not know whether, unlike her, some NSSAEs in other markets across the country have unique responsibilities for casino accounts or what those individuals would do on a day-to-day basis. Pl. Dep. 167-69.

- She does not know whether NSSAEs in other markets across the country prepare marketing presentations. Pl. Dep. 170.

12

- She does not know whether NSSAEs in other markets across the country analyze and research market demographics. Pl. Dep. 170.

- Plaintiff even admitted that an employee's duties varied depending on the client, and that employees had varying clients. Pl. Dep. 98, 126, 136-37.

These admissions represent serious hurdles, to say the least, to any effort by Plaintiff to show that she is similarly situated to any other NSSAEs.

Turning to the period of time that she temporarily performed some of the duties of a co-worker's AE position while he was on leave for cancer treatment, Plaintiff again makes numerous admissions demonstrating that she cannot show that her duties were similarly situated to those of other AEs:

- This was a different position than her NSSAE position, and she stopped performing her NSSAE duties. Pl. Dep. 178-81

- Unlike other AEs, she was assigned to only a single account and was not told to bring in new business. Pl. Dep. 183-84, 186, 188.

- Each AE has their own way of selling and thus their duties depend on the individual. Pl. Dep. 212. She has no idea how other AEs make sales. Pl. Dep. 213.

- She is not aware of any other AE who worked on just a single account. Pl. Dep. 199.

- She is not aware of any other AE who, as she claimed was the case for her during this time, did not attempt to bring in new business. Pl. Dep. 199-200.

- She has no idea how other AEs bring in new business. Pl. Dep. 185.

- She does not know how other AEs go about selling to clients. Pl. Dep. 201.

- Even as to the AEs in the New York market, she does not know what clients or how many clients they had, what client development and prospecting activities they engaged in, or how often they worked outside the office to make sales. Pl. Dep. 209-11, 215. Other than knowing that the other AEs must sell enough to meet a budget, she knows nothing else about their duties. Pl. Dep. 216-17.

Similarly, Mr. Kennedy confirmed the individualized variations in AEs' duties:

- AE job qualifications vary "to a large degree" depending on what particular needs there are to be filled. For example, within the New York market, an AE's duties in the Hudson Valley office will vary greatly from those of an AE working in the New York City Office. Kennedy Dep. 113.

13

- The ratio of an AE's new business to existing business, and their duties associated therewith, "var[y] completely" from one AE to another, as well as from month-to-month and year-to-year. Kennedy Dep. 115, 145.

- The percentage of time an AE spends prospecting for new business, servicing and growing business, researching the business, consulting with clients and potential clients, and improving their advertising and marketing strategies varies as well among AEs. Kennedy Dep. 115-117.

As to Plaintiff's current NBDAE position, she again admits that she has no information about the duties of other individuals with this title across the country or even if any such individuals exist:

- She is the only NBDAE in New York. Pl. Dep. 219.

- She does not know any of NBDAEs in other markets. Pl. Dep. 219. She thinks other markets might have them, but she is not sure. Pl. Dep. 219.

- She has no contact whatsoever with any other NBDAEs in any other markets. Pl. Dep. 219-20.

- She has no idea what other NBDAEs (if they exist) do on a day-to-day basis. Pl. Dep. 221-22.

In sum, Plaintiffs' demand for highly confidential, personal contact information and social security numbers is premature, lacks the requisite factual support, and appears intended solely to be used as a tool to solicit other individuals to join the action. That goal is highly inappropriate and Plaintiff's Motion should be denied. See Bodner v. Oreck Direct, LLC, No. 06-4756, 2007 WL 1223777, at * 2-3 (N.D. Cal. Apr. 25, 2007) (finding that the attorneys, not the plaintiff, were the "driving force behind this action," and, deeming such practices "abhorrent" and improper "cart before the horse" litigation practices, denying class certification). Moreover, if Plaintiff is given the confidential contact information for hundreds of individuals it would amount to the granting of preliminary class and collective certification without any evidence having to have been provided to meet the standard for such relief, and without Defendants being given the chance to brief the issue. Accordingly, if there is any question about whether Plaintiff should be provided with the contact

information, Defendants respectfully request the opportunity to fully brief the issues of notice and

conditional certification.

## CONCLUSION

For the forgoing reasons, Plaintiff's Motion should be denied and Plaintiff should be

directed to compensate Defendants for their fees and costs incurred in defending a Motion that, in

contrast to the well-established standards for a motion for reconsideration, merely re-stated the

same arguments that were already presented to, and ruled upon by the Court.


Dated:  April 10, 2008
        New York, New York

                                        MORGAN, LEWIS & BOCKIUS LLP

                                        By:
                                            Christopher A. Parlo (CP-4310)
                                            Michael J. Puma (MP-5573)
                                            Leni D. Battaglia (LB-4704)

                                        101 Park Avenue
                                        New York, New York 10178-0060
                                        (212) 309-6000
                                        (212) 309-6001 (fax)

                                        Counsel for Defendants
                                            Clear Channel Communications, Inc. and
                                            Clear Channel Outdoor Holdings, Inc.

15